NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2022
Decided August 18, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-3055

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 18-CR-40049-001 |
| DEMAINE MARQUELLE GLENN,<br>*Defendant-Appellant*. | James E. Shadid,<br>*Judge*. |

**O R D E R**

Demaine Glenn received a sentence of 71-months' imprisonment for possessing a firearm as a felon. The sentence was over double the low-end of the advisory guidelines range of 30 to 37 months, leading Glenn to argue on appeal that the ultimate sentence is too long and thus substantively unreasonable. We affirm, as the district court properly calculated the advisory range and then justified the ultimate 71-month sentence by applying the factors Congress delineated in 18 U.S.C. § 3553(a).

**I**

During the early morning hours of September 1, 2018, police officers in Rock Island, Illinois responded to a report of shots fired at another car by the occupants of a Chevrolet Heritage High Roof. Upon arriving at the location, the officers spotted that exact car and tried to stop it. The driver, Demaine Glenn, refused to stop, though, and indeed led the police on a high-speed car chase through western Illinois and eastern Iowa, reaching speeds upwards of 90 miles per hour, running red lights and stop signs, and turning off his headlights to avoid detection. The chase ended with Glenn losing control of his car, crashing, and then fleeing on foot before being apprehended. The police then recovered Glenn's fingerprints from a firearm located near the crash site.

At the time of the car chase, Glenn was on parole, having served six years of a 25-year sentence for a home burglary. That offense was especially violent, as Glenn and an accomplice assaulted a 66-year-old woman in her home, beat her, and threatened to kill her if she did not give them money. The car chase itself resulted in state authorities revoking Glenn's parole on the home burglary.

Glenn's conduct during the car chase led to additional charges and convictions in both state and federal court. First, Glenn was convicted in Illinois state court of aggravated fleeing and eluding a peace officer. Second, an Iowa state court convicted him of eluding an officer. For those state charges, he served a total of 20 months' imprisonment. Finally, after Glenn completed his state-court sentences, he found himself on the receiving end of a federal charge for possessing a firearm as a felon. 18 U.S.C. §§ 922(g), 924(a)(2). He pleaded guilty to this charge without a plea agreement.

In preparation for sentencing, the probation office prepared a presentence investigation report and calculated Glenn's advisory range under the Sentencing Guidelines as 30 to 37 months' imprisonment, based on a total offense level of 17 and a criminal history category of III. Beginning with a base offense level of 14 because Glenn possessed a firearm as a felon, U.S.S.G. § 2K2.1(a)(6)(A), the probation office added a two-level enhancement for reckless endangerment during flight, *id.* § 3C1.2, and a four-level increase for possessing a firearm in connection with another felony offense, *id.* § 2K2.1(b)(6)(B), offset by a three-level reduction for accepting responsibility, *id.* § 3E1.1(a)–(b). The probation office added that the sentencing range "may not capture the seriousness of the offense conduct," given that Glenn endangered the public during

both the shootout and the subsequent car chase. Nor, the probation office observed, did Glenn's prior burglary sentence deter him from committing the current crime.

Both parties asked the district judge to vary from the advisory range of 30 to 37 months. For its part, the government relied on Application Note 4 to U.S.S.G. § 4B1.2, which states that an upward variance may be appropriate if the defendant had a prior conviction for burglary that involved violence but did not qualify as a crime of violence. The government analogized Glenn's prior home burglary conviction to one that justified a sentencing range of 57 to 71 months. *See id.* § 2K2.1(a)(4)(A). Glenn, in turn, requested a term of 10 to 17 months to reflect the 20 months that he had spent in state prison for the conduct arising out of the shootout and flight from the police. *See id.* § 5K2.23. He also expressed the view that the commentary in Application Note 4 to § 4B1.2 had no bearing on the appropriate offense level for his felon-in-possession offense.

Sentencing began with the district judge, over no objection from either party, adopting the probation office's guidelines calculation and thus finding the advisory range to be 30 to 37 months' imprisonment. From there the district judge heard the parties' respective positions on what sentence Glenn should receive based on an application of the factors in 18 U.S.C. § 3553(a). The district judge first ruled that he would not exercise his discretion to adjust the sentence downwards by 20 months to account for the time that Glenn had spent in state prison. The judge explained that Glenn's flight from the police—which involved a shootout and then a dangerous and lengthy high-speed chase—caused a substantial risk of harm that was not fully accounted for in his state sentences.

The district judge also focused on Glenn's prior conviction for home burglary and saw the advisory guidelines range as not fully capturing the gravity of that prior offense conduct. The judge found, in line with the government's submission, that the burglary, "although not a crime of violence under the guidelines, … should be treated as a crime of violence because of the violent nature of the conduct itself." And that led the judge to conclude that Glenn "should be treated as if the sentencing range were 57 to 71 months."

From there the district judge applied the § 3553(a) factors and explained why he ultimately believed Glenn should receive a 71-month sentence for the instant felon-in-possession offense. The judge observed that Glenn's sporadic employment, lack of formal education, and consistent criminal conduct while on parole suggested that he

was likely to reoffend in the future. And so, too, did the district judge underscore that the substantial risk of harm to others that Glenn created during the flight and the unnecessary violence he engaged in during the burglary lent additional support to the above-guidelines term. In imposing the 71-month sentence, the district judge expressly confirmed that the "ultimate sentence is based on the [§] 3553 factors."

**II**

In his opening brief, Glenn challenged his above-guidelines sentence based on both procedural error and substantive unreasonableness.

Glenn's procedural error argument was that the district court, in believing that Glenn's prior burglary was akin to a crime of violence requiring a guidelines range of 57 to 71 months, improperly anchored its analysis of the § 3553(a) factors to that higher and incorrect sentencing range. We recently cautioned district judges against going too far in preparing alternative, phantom-guidelines calculations instead of computing a single advisory range and then holistically applying the factors in § 3553(a) to determine the appropriate sentence. *See United States v. Settles*, No. 21-2780, 2022 WL 3209524, at *3 (7th Cir. Aug. 9, 2022).

In oral argument, however, Glenn's counsel withdrew this procedural-error contention and acknowledged that the sentencing judge applied the correct advisory guidelines range of 30 to 37 months. That concession makes clear that the only issue left for our review is the substantive reasonableness of the district judge's imposition of a 71-month sentence, a decision we review only for abuse of discretion. *See United States v. Ambriz-Villa*, 28 F.4th 786, 791 (7th Cir. 2022).

Glenn argues that this sentence, which was more than double the bottom of the guidelines range, is substantively unreasonable. In his view, the guidelines calculation accounted for the two reasons that the judge provided for such an increase: his prior imprisonment—and criminal history points—for his burglary, and his prior time served in his two state sentences—and two-level enhancement—for the danger caused by the car chase.

But the district judge acted within his discretion in sentencing Glenn. We will uphold an above-guidelines term—even when based on reasoning already reflected in the guidelines calculation—so long as the judge offers an adequate justification for the sentence. *See United States v. Gonzalez*, 3 F.4th 963, 966–67 (7th Cir. 2021). Here, the judge

was especially troubled by the violent nature of Glenn's prior burglary, in which he invaded a woman's home, falsely imprisoned her, and inflicted physical and emotional harm. And the judge noted that Glenn's flight and evasion—which began with a shootout—exceeded the danger of typical car chases. The judge's concern for public safety based on Glenn's violent behavior thus adequately explained his rationale for imposing an above-guidelines sentence. *See United States v. Vasquez-Abarca*, 946 F.3d 990, 994–95 (7th Cir. 2020) (affirming upward variance when Guidelines did not fully reflect criminal history and previous sentences had not deterred defendant).

AFFIRMED